IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| DAVID A. PRATT,<br><br>        Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,<br><br>        Defendant. | CV 21-15-GF-JTJ<br><br>**MEMORANDUM AND ORDER** |

## INTRODUCTION

Plaintiff David Alan Pratt (Pratt) brought this action to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner), denying his application for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Pratt resides in Great Falls, Montana. 29 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3). The parties have consented to have the undersigned conduct all proceedings in this matter and enter judgment. (Doc. 5).

## **BACKGROUND**

Pratt is 46 years old. (Doc. 8 at 524). Pratt is a military veteran. Pratt served in the army from 1993 to 1997. (Doc. 8 at 359). Pratt served in the Arizona National Guard form 1997 through 2000. *Id.* Pratt has a college education. In 2010, Pratt obtained an associate's degree in criminal justice and an associate's degree in computer information technology. (Doc. 8 at 358-359). From 2000 through 2019, Pratt worked as an office manager, an office administrator, and as an assistant college registrar. (Doc. 8 at 361-366). Pratt received a 100% disability rating from the Veterans Administration on April 10, 2019. (Doc. 8 at 520). The last day that Pratt worked was May 31, 2019. (Doc. 8 at 367).

Pratt filed his application for Social Security disability and disability insurance benefits on May 31, 2019. (Doc. 8 at 315). Pratt alleged that he became disabled on June 1, 2019. (Doc. 8 at 370). Pratt alleged that he became disabled largely due migraine headaches, post-traumatic stress disorder (PTSD), and chronic pain in his back, legs and arms caused by injuries he sustained while serving as a paratrooper in the army. (Doc. 8 at 371-386, 393-394, 992).

An Administrative law judge (ALJ) conducted a hearing on Pratt's application for social security benefits on August 25, 2020. (Doc. 8 at 336). The

ALJ issued his decision on October 6, 2020. (Doc. 8 at 330). The ALJ found that Pratt had the following severe impairments: PTSD; major neurocognitive disorder due to history of traumatic brain injury; depression; anxiety; degenerative disc disease; cervical and lumbar spondylosis; thoracic syrinx; small fiber neuropathy; minor degenerative joint disease of the bilateral knees; history of right ACL repair; obesity; obstructive sleep apnea; and migraine headaches. (Doc. 8 at 318). The ALJ determined that Pratt was not disabled at any time between June 1, 2019, and the date of his decision, October 6, 2020. (Doc. 8 at 329). The ALJ determined that Pratt was not disabled because he possessed the residual functional capacity to perform jobs that existed in significant numbers in the national economy such as: document prep clerk, final assembler and stuffer. (Doc. 8 at 329).

Pratt requested that the Appeals Council review the ALJ's decision. The Appeals Council denied Pratt's request for review. (Doc. 8 at 1-4). The Appeals Council's denial made the ALJ's decision the final decision of the Commissioner. *Id.*

Pratt filed the present appeal on February 11, 2021. (Doc. 1). The matter has been fully briefed. (Docs. 10, 14, 15). The Court is prepared to rule.

## **STANDARD OF REVIEW**

The Court's review in this matter is limited. The Court may set aside the

Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

## BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A),(B)).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. *Id.* The five steps of the inquiry are:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Does the claimant have an impairment that is severe or a combination of impairments that is severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Do any of the claimant's impairments "meet or equal" one of the impairments described in the listing of impairments in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof under steps one through four. *Id.* The Commissioner bears the burden of proof under step five. *Id.*

## A.  ALJ's determination

The ALJ followed the 5-step evaluation process in evaluating Pratt's claim. At step 1, the ALJ determined that Pratt had not engaged in substantial gainful activity since June 1, 2019. (Doc. 8 at 318).

At step 2, the ALJ determined that Pratt had the following severe impairments: PTSD; major neurocognitive disorder due to history of traumatic brain injury; depression; anxiety; degenerative disc disease; cervical and lumbar spondylosis; thoracic syrinx; small fiber neuropathy; minor degenerative joint disease of the bilateral knees; history of right ACL repair; obesity; obstructive sleep apnea; and migraine headaches. (Doc. 8 at 318).

At step 3, the ALJ found that Pratt did not have an impairment, or combination of impairments, that met or was medically equal to one of the listed impairments. (Doc. 8 at 319).

Before considering step 4, the ALJ determined Pratt's residual functional capacity (RFC). The ALJ determined that Pratt possessed the RFC to perform light work subject to the following limitations: Pratt is able to be on his feet (standing or walking) for a total of 4 hours in an 8-hour workday; Pratt cannot crawl or climb ladders or scaffolds; Pratt can occasionally perform other postural activities; Pratt should avoid concentrated exposure to extreme cold and vibration;

Pratt can occasionally interact with the public in small groups (2-3 people); Pratt can have frequent one-on-one contact; Pratt can have occasional interaction with coworkers; Pratt can have occasional interaction with supervisors; and Pratt can perform simple, routine, and repetitive tasks with only occasional new learning required. (Doc. 8 at 321).

At step 4, the ALJ determined that Pratt was unable to perform his past relevant work as an admissions evaluator, data entry clerk, administrative specialist, and officer manager. (Doc. 8 at 328).

At step 5, the ALJ determined that Pratt possessed the RFC to perform jobs that existed in significant numbers in the national economy such as: document prep clerk, final assembler, and stuffer. (Doc. 8 at 329). Based on this finding, the ALJ determined that Pratt was not disabled. *Id.*

## CONTENTIONS

### A. Pratt's Contentions

Pratt argues that the Court should reverse the Commissioner's decision and award benefits or remand the case for further proceedings. (Doc. 10 at 28). Pratt argues that the Court should reverse the Commissioner's decision for the following reasons:

1. The ALJ failed to provide sufficient reasons for discounting the opinions of treating physician Dr. Michelle Marler, M.D., and treating counselor Lloyal Kline, LCPC, LMFT, LAC;

2. The ALJ discounted his testimony regarding the intensity, persistence, and limiting effects of his pain and other symptoms without considering the frequency and duration of medical care he has received; and

3. The ALJ erred when he presented a hypothetical question to the vocational expert that failed to account for the frequency and duration of medical care he has received for his pain and other symptoms.

(Doc. 10 at 5).

**B. Commissioner's Position**

The Commissioner argues that the Court should affirm the ALJ's decision because her decision was based on substantial evidence and was free of legal error.

## DISCUSSION

**A. Opinions of Dr. Michelle Marler and Ms. Lloyal Kline**

Dr. Michelle Marler was one of Pratt's treating physicians. Dr. Marler drafted a medical opinion letter on December 1, 2020. (Doc. 8 at 158). Dr. Marler stated in her letter that Pratt "cannot concentrate," that Pratt has a "very poor memory," and that Pratt is "unable to perform tasks without assistance," as a result of a traumatic brain injury he sustained in the military. *Id.* Dr. Marler further

stated that Pratt was "not able to learn a new job nor stand or sit for long enough to complete a job." *Id.* Dr. Marler opined that Pratt's "multiple medical conditions" made him "disabled" and "not employable." *Id.*

Ms. Kline is a treating counselor. Ms. Kline has provided counseling to Pratt for his PTSD and his traumatic brain injury since 2018. (Doc. 8 at 285). Ms. Kline drafted a medical opinion letter on November 18, 2020. *Id.* Ms. Kline stated in her letter that Pratt's "ability to be gainfully employed and take care of his daily living activities have decreased exponentially." *Id.* Ms. Kline stated that Pratt had "severe memory issues that cause[d] him not to retain information even short term." *Id.* Ms. Kline stated that Pratt tended "to isolate in his home for much of the week in part due to increased anxiety, hypervigilance and paranoia." *Id.* Ms. Kline opined that Pratt "would benefit from being awarded social security benefits" as it was clear to her that Pratt was "unable to manage a job." (Doc. 8 at 285).

Pratt argues that the ALJ's decision should be reversed because he failed to provide sufficient reasons for discounting the opinions stated by Dr. Marler and Ms. Kline in their medical opinion letters. (Doc. 10 at 20-21).

Pratt's argument is not persuasive. Dr. Marler and Ms. Kline drafted their medical opinion letters after the ALJ had issued his decision. The letters were not

9

part of the record before the ALJ. Pratt's lawyer submitted the letters to the Appeals Council on December 23, 2020, 1/1/2 months after the ALJ issued his decision. (Doc. 8 at 13, 158, 285).

Dr. Marler and Ms. Kline opined that Pratt had significant limitations with respect to concentration, memory and social functioning as a result of the brain injury he sustained in the army. (Doc. 8 at 158, 285). These post-decision opinions of Dr. Marler and Ms. Kline do not provide a basis for a remand. First, Medical opinions solicited after an adverse administrative decision denying benefits carry little, if any weight. *Weet v. Sullivan*, 877 F.2d 20, 30 (9th Cir. 1989). Second, and more importantly, the opinions offered by Dr. Marler and Ms. Kline are not consistent with Pratt's frequent normal mental status examinations, Pratt's lengthy post-military work history, and Pratt's daily activities, all of which the ALJ discussed at length in his decision. (*See* Doc. 8 at 322-328). Notwithstanding Pratt's complaints of severe memory deficits, Pratt obtained college degrees in criminal justice and computer information technology in 2010. Pratt worked regularly from 2000 through 2019 as an office manager, an office administrator, and as an assistant college registrar. (Doc. 8 at 358-359, 361-366, 1321).

### B. Pratt's Testimony Regarding His Symptoms and Limitations

Pratt argues that the ALJ erred when the ALJ evaluated his testimony regarding the severity of his limitations and symptoms. Pratt argues that the ALJ failed to consider the amount of medical care he has received, as required under Social Security Ruling (SSR) 16-3p, paragraph 2(d)(5). (Doc. 10 at 5). Pratt argues that the ALJ failed to take into account that he had 55 medical visits in seven months in 2019, and 81 medical visits in 2020, which resulted in an average of seven medical visits per month. (Doc. 10 at 21, 23). Pratt argues that his need for frequent medical treatment would preclude him from having consistent attendance at work. (Doc. 10 at 23, 28, 30-32).

An ALJ conducts a two-step analysis to determine whether a claimant's testimony regarding subjective pain or intensity of symptoms is credible. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Rather, the claimant need only show

11

that her impairment could reasonably have caused some degree of the symptoms. *Id.*

If the claimant satisfies the first step of this analysis, the ALJ must evaluate "the intensity and persistence of [the claimant's alleged] symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities." *See* Soc. Sec. Ruling (SSR) 16-3p, 2017 WL 5180304, at *3. When evaluating the intensity, persistence and limiting effects of the claimant's symptoms, the ALJ must consider each of the following factors to the extent there is evidence in the record that relates to the factor:

1. the claimant's daily activities;

2. the location, duration, frequency, and intensity of the claimant's pain or other symptoms;

3. the events that precipitate or aggravate the claimant's symptoms;

4. the type, dosage and effectiveness of any medication that the claimant takes to relieve her pain or other symptoms;

5. the amount of medical treatment that the claimant has received for relief of pain or other symptoms; and

6. any measures other than medical treatment that the claimant uses to relieve her pain or other symptoms.

SSR 16-3p, § 2(d), 2017 WL 5180304, at *7-8.

Here, the ALJ provided a number of valid reasons for discounting Pratt's

12

subjective complaints about the disabling nature of his limitations and symptoms. First, the ALJ noted that Pratt had made statements to his treating providers that were inconsistent with his testimony and inconsistent with statements he had made on his application for disability benefits. (Doc. 8 at 323). Second, the ALJ noted that Pratt's effort and motivation during medical testing had been questioned by medical providers. (Doc. 8 at 323-324). Third, the ALJ noted that the reason that Pratt quit working on May 31, 2019, appeared unrelated to his allegations of disability. (Doc. 8 at 323). Fourth, the ALJ noted that Pratt's subjective complaints regarding his mental and physical limitations were inconsistent with his daily activities. (Doc. 8 at 324-325). Fifth, the ALJ noted that Pratt's mental and physical complaints of chronic pain were largely related to injuries he had suffered in the army, and that Pratt had worked for years at substantial gainful activity after his discharge from the military. (Doc. 8 at 324). Finally, the ALJ noted that the objective medical findings during the period from June 1, 2019, through October 6, 2020, had been fairly unremarkable. (Doc. 8 at 325-328).

The ALJ failed, however, to consider whether the frequency and duration of Pratt's medical treatment could potentially interfere with his ability to work. The prejudice of this omission is demonstrated in the vocational expert's response to the hypothetical questions presented by the ALJ. The vocational expert Anne

13

Arrington testified that if an individual would miss more than two workdays in a typical work month, that level "of absenteeism would not allow for someone to sustain competitive work." (Doc. 8 at 407). Accordingly, it was error for the ALJ to not consider the frequency and duration of Pratt's medical treatment.

### C. Hypothetical Question Presented to the Vocational Expert

Hypothetical questions posed to a vocational expert must address all of the claimant's limitations and restrictions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert is valuable only to the extent . . . it is supported by medical evidence." *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). If the assumptions in the hypothetical are not supported by the record, the vocational expert's testimony that the claimant could perform other work that exists in the national economy has no evidentiary value. *Embrey*, 849 F.2d at 422.

As discussed above, the ALJ erred when he failed to consider the frequency and duration of Pratt's medical treatment. This error may have affected the ALJ's hypothetical questions to the vocational expert, and in turn, may have undermined the vocational expert's testimony that Pratt could perform other work that existed in the national economy.

## **REMEDY**

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Remand for an award of benefits is appropriate only where there are no outstanding issues that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the ALJ had properly considered all of the evidence in the record. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Here, there are outstanding issues to be resolved. It is not clear whether Pratt is disabled. Remand for further proceedings is appropriate. On remand, the ALJ should consider the frequency and duration of Pratt's medical treatment.

Accordingly, IT IS HEREBY ORDERED:

1. The Commissioner's decision to deny Pratt's claim for disability and supplemental income benefits is REVERSED and REMANDED for further proceedings.

2. The Clerk is directed to enter judgment accordingly.

DATED this 28th day of December, 2021.

/s/ John Johnston
United States Magistrate Judge